UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

DARA GRIMES,
          *Plaintiff*,

    v.

DEPARTMENT OF DEFENSE,
          *Defendant.*

No. 1:24-cv-1164-MSN-IDD

**<u>MEMORANDUM OPINION AND ORDER</u>**

      This matter comes before the Court on Defendant's Motion to Dismiss Plaintiff's First Amended Complaint. ECF 26. Upon consideration of the pleadings and for the reasons set forth below, the Court will GRANT the motion to dismiss Plaintiff's claims.

**I.      BACKGROUND[1]**

      Plaintiff Dara Grimes was employed as a Social Worker with the Department of Defense's Defense Health Agency's Directorate of Behavioral Health at Fort Belvoir Community Hospital from May 3, 2016 to May 31, 2022. ECF 23 ¶ 19. Plaintiff is a Black woman and she was diagnosed with anxiety on October 18, 2021. *Id.* ¶¶ 20-21. Her anxiety has resulted in insomnia, chronic fatigue, memory lapses, irritability, panic attacks, and weight loss, among other symptoms. *Id.* ¶ 21. The symptoms disrupt her ability to sleep, concentrate, remember critical tasks, and perform work-related duties. *Id.*

      During the relevant time period, Plaintiff's second line supervisor was Department Chief Dr. Tangeneare Singh. *Id.* ¶ 25. On or around April 20, 2020, Plaintiff was reassigned from the

---

[1] The Court assumes the truth of Plaintiff's factual allegations and draws all reasonable factual inferences in Plaintiff's favor for purposes of Defendant's Motion to Dismiss. *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002).

Fairfax Health Center outlying clinic to the child and adolescent psychiatry school-based behavior health program. *Id.* ¶ 26. At that time, her first-line supervisor was Service Chief Dr. Jennifer Ulbricht. *Id.*

In August 2020, Plaintiff's first-line supervisor transitioned to Lieutenant Commander Dr. Emily Mulvey (Caucasian). *Id.* ¶ 24. In October 2020, Plaintiff expressed concerns that she had not received performance counseling from Dr. Mulvey, but that other social workers and psychologists had received performance counseling from their supervisor Dr. Ulbricht. *Id.* ¶ 28. During Plaintiff's mid-review in December 2020, it was noted there was "not enough data" to conduct a proper assessment. *Id.* ¶ 30. Dr. Mulvey was responsible for collecting the data and conducting the counseling interview. *Id.*

Dr. Ulbricht appointed Lisa Lam (Caucasian) to a team lead position, which afforded her professional development opportunities and allowed her to assign cases, and she held the same GS-12 credentials as Plaintiff and other African-American colleagues. *Id.* ¶ 35. Dr. Patterson (Caucasian), a GS-13, and Claire Michaud (Caucasian), a GS-12, were allowed to telework while Plaintiff and other colleagues were unable to telework. *Id.* ¶¶ 36, 37.

In June 2021, Plaintiff was instructed to cover on-call shifts on June 29, 2021, and July 5, 2021, without proper notice. *Id.* ¶¶ 37-38. Plaintiff did not ultimately cover the shifts. *Id.*

Dr. Mulvey reprimanded Plaintiff over email and verbally at staff meetings regarding the disposition of patients, even though Plaintiff was adhering to standard procedures and protocol. *Id.* ¶¶ 40-43. Plaintiff complained about this "harassment" to Dr. Mulvey but no action was taken. *Id.* ¶ 45.

On August 4, 2021, Plaintiff reported two incidents to Dr. Singh involving PHP Service Chief Dr. Mary Hosch berating Plaintiff. *Id.* ¶¶ 48-49. Dr. Singh offered for the parties to meet, which Plaintiff declined. *Id.*

Plaintiff had an original FMLA claim that began on November 8, 2020, and expired November 8, 2021. *Id.* ¶ 64(d). As of August 2021, Plaintiff had 480 hours remaining of her original FMLA leave balance. *Id.* ¶ 67. On August 13, 2021, Plaintiff submitted to Dr. Mulvey forms completed by her physician related to a new application for FMLA leave for a different medical issue. *Id.* ¶¶ 51, 64(d). Dr. Mulvey asked other departments for information regarding the new FMLA leave request and provided Plaintiff with information about other resources. *Id.* ¶¶ 53, 58. Dr. Mulvey submitted this new FMLA form for review the week of August 31, 2021. *Id.* ¶ 58. Thereafter, Dr. Mulvey sent Plaintiff forms related to her new FMLA application that listed the start date of Plaintiff's FMLA claim as being November 9, 2021, and listed the date of submission of the application as August 13, 2021. *Id.* ¶ 62. It was explained to Plaintiff that FMLA can only be invoked for the reasons designated on forms provided by medical providers. *Id.* ¶ 63(d). Plaintiff was denied FMLA entitlement for this new FMLA claim, and therefore the 480 hours remaining of her original FMLA leave balance expired on November 9, 2021. *Id.* ¶ 67.

White employees supervised by Dr. Ulbricht had FMLA requests approved. *Id.* ¶ 80. When Plaintiff challenged Dr. Mulvey and advocated for herself, she faced harassment and retaliation from Dr. Mulvey. *Id.* ¶ 81. Plaintiff reported harassment based on race, color, impairment, and/or EEO activity and requested assistance from ten (10) different persons on various dates starting on or about August 25, 2021 until October 14, 2021. *Id.* ¶ 68. Plaintiff initiated EEO contact in September 2021 and filed a formal complaint on October 22, 2021. *Id.* ¶ 10.

On November 4, 2021, Dr. Mulvey conveyed negative information about Plaintiff to Jamey Chianetta, a former principal. *Id.* ¶ 70. Dr. Mulvey's actions negatively impacted Plaintiff's working relationship with Ms. Chianetta. *Id.* ¶ 75. While on leave to attend a family member's funeral, Dr. Mulvey sent a work-related text to Plaintiff. *Id.* ¶ 79.

Plaintiff's working environment was hostile and intimidating. *Id.* ¶ 76. Plaintiff developed anxiety. *Id.* ¶ 77. She had difficulty focusing and she was counseled regarding late notes and level of care for patients. *Id.* ¶¶ 77-78.

After being instructed by Dr. Mulvey and an HR Representative to do so, Plaintiff submitted a second new FMLA claim. *Id.* ¶ 83. The claim was denied due to incomplete information. *Id.* The second denial of FMLA leave caused Plaintiff distress. *Id.* ¶ 85. Plaintiff had health impacts due to workplace stress and submitted a resignation letter on May 31, 2022. *Id.* ¶¶ 85, 87.

Plaintiff's First Amended Complaint includes allegations of race and color discrimination, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), and disability discrimination, hostile work environment, and retaliation in violation of the Rehabilitation Act of 1973. *Id.* at 24-33. She seeks lost wages and benefits, compensatory damages, costs, and attorney's fees. *Id.* at 33.

## II.  LEGAL STANDARD

This Court may dismiss a claim when the complaint fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint will survive a motion to dismiss under Rule 12(b)(6) "only when a plaintiff has set forth 'enough facts to state a claim to relief that is plausible on its face.'" *Taylor v. First Premier Bank*, 841 F. Supp. 2d 931, 932 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court may not "accept as true a legal conclusion

couched as a factual allegation." *Id.* at 933 (citations omitted). In Title VII employment discrimination and harassment cases, the standard is the same. "A plaintiff is not required to plead facts that constitute a prima face case . . . [but] factual allegations must be enough to raise a right to relief about the speculative level." *Robinson v. Loudoun County Public Schools*, No. 1:16-cv-1604, 2017 WL 3599639, at *3 (E.D. Va. Aug. 18, 2017) (cleaned up and internal citations and quotations omitted).

## III.    ANALYSIS

### A.    Discrimination Claims

To properly bring a Title VII disparate treatment claim, Plaintiff must plausibly allege "(1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) her job performance was satisfactory; and (4) the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination." *Bourne v. Texas Roadhouse Spotsylvania Location*, No. 3:24CV218 (RCY), 2025 WL 565019, at *3 (E.D. Va. Feb. 20, 2025) (citations omitted). An adverse employment action must adversely affect "the terms, conditions, or benefits" of the plaintiff's employment to be actionable. *Fellores v. Winter*, No. 2:06CV551, 2007 WL 2471527, at *3 (E.D. Va. Aug. 23, 2007) (citations omitted). This does not require that the plaintiff prove they were subject to an "ultimate employment decision" such as termination or failure to promote, but they must show more "than a mere inconvenience, annoyance, disappointment, or change." *Id.* (citations omitted). Plaintiff must plead that the actions left her "worse off." *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 359 (2024). Similarly, under the Rehabilitation Act, Plaintiff must plausibly allege "(1) she is disabled; (2) she was a qualified individual; and (3) she suffered an adverse employment action based on her disability." *Michael*

*v. Virginia Dep't of Transportation*, No. 3:21CV764, 2022 WL 3569004, at *5 (E.D. Va. Aug. 18, 2022) (citation omitted).

Defendant is correct that most of the conduct alleged by Plaintiff does not rise to the level of an adverse employment action. Plaintiff complains of negative feedback, ignored complaints, reprimands, requests to cover shifts, denial of telework, and lack of performance evaluations. ECF 23 ¶¶ 28-30, 35-37, 40, 42, 48. These instances do not rise to the level of adverse employment actions. *Couch v. City of Virginia Beach*, No. 2:22CV196, 2025 WL 672733, at *7 (E.D. Va. Mar. 3, 2025) (finding "changed job duties, work criticism, missed meetings, unprofessional behavior, rude comments from a supervisor, and the like, fall far short of constituting adverse employment actions."); *Dailey v. Lew*, No. 1:15-cv-02527, 2016 WL 1558150 at *6 (D. Md. Apr. 18, 2016) (holding that the suspension and denial of teleworking privileges did not constitute adverse employment actions), *aff'd*, 670 F. App'x 142 (4th Cir. 2016). However, as conceded by Defendant, the denial of Plaintiff's requests for FMLA leave could constitute adverse employment actions. *Muldrow v. Blank*, No. PWG-13-1200, 2014 WL 938475, at *7 n.4 (D. Md. Mar. 10, 2014) ("[D]enying Plaintiff FMLA leave ... may constitute an adverse employment action."); *Liggett v. Rumsfeld*, No. CIV. A. 04-1363 (GBL), 2005 WL 2099782, at *5 (E.D. Va. Aug. 29, 2005) (finding denied requests for leave are adverse employment actions remediable under Title VII).[2]

---

[2] In her Opposition, Plaintiff also argues that her reassignment from Fairfax Health outlying clinic to the child and adolescent psychiatry school-based behavioral health program was an adverse employment action. *See* ECF 31 at 7-8. However, this reassignment is divorced from Plaintiff's allegations of discrimination. Plaintiff's discriminatory allegations are tied to the arrival of Dr. Mulvey as her supervisor, as she alleges that prior to Dr. Mulvey's arrival she was "treated professionally and respectfully." ECF 23 ¶ 73. Plaintiff's reassignment occurred April 20, 2020, prior to Dr. Mulvey's arrival in August 2020. ECF 23 at ¶¶ 24, 26. Therefore, her reassignment does not provide any evidence of discrimination.

The denials of her FMLA leave are therefore the only discrete employment actions relevant to her discrimination claims.

However, even assuming the denials of Plaintiff's FMLA leave constitute adverse employment actions, Plaintiff has not adequately alleged any discriminatory animus in connection with the denials of FMLA leave. To adequately plead discriminatory animus, a plaintiff must allege "facts that make plausible that the alleged discrete acts of discrimination were adverse employment actions imposed as a result of her race [or disability.]" *Barnhill v. Garland*, 636 F. Supp. 592, 601 (E.D. Va. 2022).

Regarding race, Plaintiff fails to plead facts that allege that the decisions to deny her FMLA leave were because of her race. Plaintiff's Complaint contains many conclusory allegations that Plaintiff complained of racial discrimination, and that certain actions were motivated by her race. ECF 23 ¶¶ 31, 68, 74, 92. The Court need not accept these conclusory allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Plaintiff attempts to make allegations regarding comparator Caucasian employees who were treated more favorably; however, by virtue of Plaintiff's own allegations these employees are not comparable to her. She makes allegations regarding white employees who had a different supervisor, and an employee who held a position different than Plaintiff's because she was a team lead. *See* ECF 23 ¶¶ 35, 80. Plaintiff fails to establish a plausible basis for believing that similarly situated white employees were treated better or that Plaintiff's race was the true basis for the denials of her FMLA leave. *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 191 (4th Cir. 2010), *aff'd sub nom. Coleman v. Ct. of Appeals of Maryland*, 566 U.S. 30 (2012). Accordingly, because Plaintiff's allegations fail to "rise above

speculation" she has "failed to state a Title VII race discrimination claim." *Coleman*, 626 F.3d at 191.

Regarding disability, Plaintiff's disability discrimination allegations are even more threadbare. Plaintiff's factual allegations regarding disability discrimination amount to the facts that she has anxiety, that Dr. Mulvey perceived Plaintiff as disabled, and that unidentified non-disabled coworkers were provided FMLA leave. ECF 23 ¶¶ 21, 55, 99. From these conclusory facts, Plaintiff concludes she was "discriminated against and harassed…on the basis of her disability." *Id.* ¶ 127. Such allegations are wholly conclusory and fail to state a claim of disability discrimination.

Accordingly, this Court will dismiss Plaintiff's claims for race and disability discrimination (Count 1 and Count 4, respectively).

## B.    Hostile Work Environment Claims

In order to plausibly plead a hostile work environment claim, Plaintiff must allege "that there is (1) unwelcome conduct; (2) that is based on the plaintiff's ... race [or disability]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 271 (4th Cir. 2015) (citations and internal quotation marks omitted); *Katz v. U.S. Dep't of Just.*, No. 1:20-CV-554, 2022 WL 2375162, at *4 (E.D. Va. Jun. 30, 2022). "The claimant must also allege that [her] protected characteristic was the 'but for' cause of the alleged conduct." *Laurent-Workman v. Wormuth*, 54 F.4th 201, 210 (4th Cir. 2022).

Plaintiff's allegations are insufficient because the challenged conduct was not severe or pervasive. To meet the severe and pervasive prong, Plaintiff's workplace must be "'permeated with discriminatory intimidation, ridicule, and insult ... that is sufficiently severe or pervasive to

alter the conditions of the victim's employment and create an abusive working environment.'"
*Roberts v. Fairfax Cnty. Pub. Schs.*, 858 F. Supp. 2d 605, 609 (E.D. Va. 2012) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993)). "Conduct must be extreme to amount to a change in the terms and conditions of employment." *Rizkalla v. Eng'g, Mgmt. & Integration, Inc.*, No. CIV A 1:05-957, 2006 WL 4459434, at *13 (E.D. Va. Aug. 29, 2006), *aff'd*, 222 F. App'x 262 (4th Cir. 2007). Accordingly, "[p]roving that conduct rises to the level of objectively severe and pervasive is a tall order." *Hill v. Panetta*, No. 1:12-cv-350, 2012 WL 12871178, at *8 (E.D. Va. Oct. 4, 2012), *aff'd sub nom. Hill v. Hagel*, 561 F. App'x 264 (4th Cir. 2014).

Plaintiff's Complaint raises no more than a "laundry-list of her workplace grievances." *Green v. Sessions*, No. 1:17-cv-01365, 2018 WL 2025299, at *11 (E.D. Va. May 1, 2018), *aff'd sub nom, Green v. Whitaker*, 744 F. App'x 802 (4th Cir. 2018). Specifically, Plaintiff alleges that a hostile work environment was created due to "(1) excessive micromanaging, (2) negative reviews, (3) yelling, (4) derogatory comments, (5) FMLA interference, (6) reprimands, (7) failure to hold performance standards discussion, (8) harassing emails, (9) excessive workload that exceeded duty hours, and (10) denial of her requests for support." ECF 23 ¶¶ 100, 131. Plaintiff does not describe or recount any comments made towards her, instead making conclusory and generic statements that derogatory comments occurred. Comments, even offensive ones, and criticisms of Plaintiff's work do not rise to the level of severe or pervasive harassment. *See Buchhagen v. ICF Int'l, Inc.*, 545 F. App'x 217, 219 (4th Cir. 2013) (finding that a supervisor "mockingly" yelling, "repeatedly harp[ing]" and making "snide comments" at an employee "falls far short of being severe or pervasive enough to establish an abusive environment"); *Hill v. Panetta*, No. 1:12-cv-350, 2012 WL 12871178, at *9 (E.D. Va. Oct. 4, 2012) (finding criticisms of work performance and being subject to rude conduct "do[es] not rise to the level of severe or

pervasive harassment necessary to state a hostile work environment claim") *aff'd sub nom. Hill v. Hagel*, 561 F. App'x 264 (4th Cir. 2014). Plaintiff's allegations do not rise to the level of "extreme" conduct necessary to constitute severe or pervasive harassment.[3]

Accordingly, this Court will dismiss Plaintiff's claims for hostile work environment based on race and disability (Count 2 and Count 5, respectively).

### C.    Retaliation Claims

Finally, Plaintiff alleges she was retaliated against in violation of Title VII and the Rehabilitation Act. ECF 23 at 28-29, 32-33. Under both statutes, Plaintiff must allege that she engaged in protected activity, that the employer took adverse employment action against her, and that there was a causal connection between the employment action and the protected activity. *Hooven-Lewis v. Caldera*, 249 F.3d 259, 271 (4th Cir. 2001) (citing *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998)) (listing the elements for retaliation under the Rehabilitation Act); *Desai v. DeJoy*, No. 1:22-CV-846, 2024 WL 3092403, at *7 (E.D. Va. Jun. 20, 2024), *aff'd*, No. 24-1796, 2024 WL 5199612 (4th Cir. Dec. 23, 2024) (same elements for Title VII claim).

Plaintiff alleges numerous instances of her complaining about harassment and discrimination to various people, all culminating in a formal EEO complaint submitted on October 22, 2021. *See* ECF 23 ¶¶ 10, 31, 45, 68, 74, 82. Plaintiff largely fails to identify any specifics regarding these complaints, how they were communicated, and to whom each complaint was made.

---

[3] For these reasons, any potential claim by Plaintiff for constructive discharge based on the alleged hostile work environment also fails. *Sunkins v. Hampton Roads Connector Partners*, 701 F. Supp. 3d 342, 356 (E.D. Va. 2023) (citation omitted) ("To establish a hostile-environment constructive discharge claim, a plaintiff must show the requirements of both a hostile work environment and a constructive discharge claim.").

As explained in § III(A), the majority of conduct complained of by Plaintiff is not materially adverse conduct sufficient to plausibly allege a retaliation claim. A retaliation claim requires that a "reasonable employee would have found the challenged action materially adverse such that a reasonable employee would be dissuaded from engaging in protected activity." *Mulgrew v. Prince William Cnty. Sch. Bd.*, No. 1:22-CV-01311, 2023 WL 7222108, at *3 (E.D. Va. Nov. 2, 2023), *aff'd*, No. 23-2255, 2024 WL 3565531 (4th Cir. Jul. 29, 2024) (internal citations and quotes omitted). Complaints of rude or disrespectful treatment of Plaintiff by her coworkers are not sufficient. *Id.*; *see also Wonasue v. University of Maryland Alumni Ass'n*, 984 F. Supp. 2d 480, 492 (D. Md. 2013) (citation omitted) (cleaned up) (Under this standard, "none of the following constitutes an adverse employment action in a retaliation claim: failing to issue a performance appraisal; moving an employee to an inferior office or eliminating the employee's work station; considering the employee 'AWOL'; or issuing a personal improvement plan, an 'Attendance Warning,' a verbal reprimand, a formal letter of reprimand, or 'a proposed termination.'"). The only actions that arguably meet this standard are the denials of FMLA leave, therefore, any claim for retaliation would need to show a causal link between Plaintiff's protected activity and the denials of FMLA leave.

However, Plaintiff fails to establish that causal connection. To establish a causal connection, Plaintiff "must plead facts showing a relationship between [her] supervisors' knowledge of [her] protected activity and their adverse actions." *Caleca v. Burns*, No. 1:23-CV-1184, 2024 WL 4255052, at *8 (E.D. Va. Sept. 20, 2024). In the absence of other facts, a plaintiff may point to temporal proximity between knowledge of protected activity and an adverse employment action, but that proximity must be "very close." *Roberts v. Glenn Indus. Grp., Inc*, 998 F.3d 111, 124, 126 (quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)).

The Fourth Circuit has held that while there is no "bright-line rule," lapses in time of around three to four months are insufficient to show a causal connection. *Id.* at 127.

Regarding the first denial of FMLA leave, Plaintiff fails to provide any date for when she was denied FMLA leave, and she fails to allege who was the decisionmaker who ultimately denied the leave. *See* ECF 23 ¶ 67. Plaintiff asks the Court to speculate that whoever made that decision was aware of any protected activity Plaintiff engaged in, and retaliated against that protected activity by denying Plaintiff's FMLA leave request. The Court will not engage in such speculation. Plaintiff also fails to establish any causal connection between her protected activity and the second denial of her FMLA leave. Plaintiff fails to plausibly allege that the second denial of her FMLA leave request was retaliatory because she provides the non-retaliatory reason for its denial. As Plaintiff explains, her second FMLA request was denied "due to incomplete information," and she was ineligible "because the doctor did not put the dates she would be out." ECF 23 ¶¶ 13(b), 83. Therefore, Plaintiff's "own allegations undermine any reasonable interference of retaliation in favor of the non-retaliatory reasons offered." *Brown v. Haines*, No. 1:23-CV-00221, 2024 WL 1312481, at *8 (E.D. Va. Mar. 27, 2024), *reconsideration denied*, No. 1:23-CV-00221 (MSN/IDD), 2024 WL 3540473 (E.D. Va. Jul. 10, 2024), *and aff'd*, No. 24-1689, 2024 WL 5200154 (4th Cir. Dec. 23, 2024), *and aff'd*, No. 24-1689, 2024 WL 5200154 (4th Cir. Dec. 23, 2024).

Plaintiff fails to plausibly allege any causal connection between her protected activity and the denials of FMLA leave. Accordingly, the Court dismisses Counts 3 and 6.

IV.    **CONCLUSION**

For the foregoing reasons it is hereby

**ORDERED** that Defendant's Motion to Dismiss Plaintiff's First Amended Complaint

(ECF 26) is **GRANTED**; and it is further

**ORDERED** that all claims against Defendant in Plaintiff's First Amended Complaint are

**DISMISSED.**

The Clerk is directed to close this civil action.

It is **SO ORDERED**.


                                                 **SO ORDERED.**

                                            /s/

                                     Michael S. Nachmanoff
                                     United States District Judge

May 7, 2025
Alexandria, Virginia